**IN THE COURT OF APPEALS OF IOWA**

No. 20-0376
Filed April 29, 2020

**IN THE INTEREST OF K.P. and B.P.,**
**Minor Children,**

**E.P., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Union County, John D. Lloyd, Judge.

A mother appeals the termination of her parental rights to two children.
**AFFIRMED.**

Christine Sand of Wild, Baxter & Sand, P.C., Guthrie Center, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Meggen Weeks, Lenox, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

A mother, Erin, appeals the juvenile court order terminating her parental rights to seven-year-old K.P. and one-year-old B.P. On appeal, she argues the State did not offer clear and convincing evidence to support a statutory ground for termination. She also contends the court should have refrained from terminating her rights because she has a strong bond with the children and maternal aunts are caring for them. After reviewing the record in full, we find little support for Erin's arguments.[1] The combination of domestic violence and substance abuse have taken a heavy toll on her family. Like the juvenile court, we find termination was the proper outcome.

**I.      Facts and Prior Proceedings**

This family came to the attention of the Iowa Department of Human Services (DHS) in October 2018 because the father, Eric, was using methamphetamine. Three months later, the DHS received an intake report of domestic violence in the home. At first, Erin denied being battered by Eric. But K.P.—then six years old— told the child protective worker that he saw his dad hurt his mom, including times when he would "choke her" and "pull her hair so she cries." K.P. also said Eric would pull on infant B.P.'s legs when he was yelling at Erin. In addition, the worker learned both parents used methamphetamine while caring for the children.

---

[1] We review orders terminating parental rights de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). While not bound by the juvenile court's fact findings, we give them weight, particularly on credibility claims. *Id.* The State must present clear and convincing evidence to support termination. *In re A.M.*, 843 N.W.2d 100, 110–11 (Iowa 2014).

The juvenile court approved an emergency removal of the children. And when Erin did not follow a DHS safety plan, the court adjudicated K.P. and B.P. as children in need of assistance (CINA). For the duration of the CINA case, the children have lived in separate homes, each with a different maternal aunt. The DHS worker explained "neither aunt thought they could take both children." Despite not being in the same home, the siblings "see each other often."

The older child, K.P., has had an especially tough time. His behaviors have worsened since his removal. He's been in and out of hospitals, and the DHS was considering placement in a psychiatric medical institute for children (PMIC). Because he expressed fear of his parents to his therapist, the DHS limited Erin's interactions with him to a therapeutic setting. At the time of the termination hearing in February 2020, Erin had not seen K.P. for more than four months because she had not contacted the boy's therapist.

Likewise, Erin's attendance at visitations with B.P. was "pretty bad" by her own admission. For example, she missed three of four visits in December 2019 and was unable to attend any visits in January 2020 because of health issues. When asked if she still had a bond with her sons, she candidly answered, "Not really anymore."

On a more positive note, Erin made headway in addressing her substance-abuse issues. She reported last using methamphetamine in May 2019. The DHS worker recognized Erin's progress on that front but expressed concern that she continued to struggle with her mental-health needs, according to her therapist.

The DHS worker testified Erin was still processing the trauma of being a domestic violence victim. For her part, Erin acknowledged suffering years of abuse

from Eric and sometimes being the aggressor herself. Admittedly, her boys witnessed "some pretty violent stuff." Erin also testified she did not realize until November 2019 that it was unhealthy to maintain a relationship with Eric. Then she conceded having contact with him again in December 2019. In addition, Erin continued to lack stable housing. And she cited transportation issues as an ongoing impediment to obtaining services. At the termination hearing, Erin also revealed she was pregnant.[2]

The juvenile court terminated Erin's parental rights to both children, citing Iowa Code section 232.116(1) (2019), paragraphs (d), (e), and (h) (as to B.P.).[3] The State also alleged subsection (f) (as to K.P.), but the juvenile court did not address that ground.[4] Erin appeals the termination order.

## II.     Analysis of Erin's Claims

### A.     Grounds for Termination

In her petition on appeal, Erin contests the statutory grounds for termination. But as the State notes in its response, "The mother really wants additional time." At the termination hearing, Erin predicted it would be three to four months "give or take" before she could manage the care of her two children. She testified, "I would like the Court to give me more time so I can progress a lot more and then get myself back on my feet for the kids because they deserve their mom." Despite that plea, the juvenile court did not consider delaying permanency under Iowa

---

[2] Erin could not identify the father of the child she was expecting but testified it was not Eric.

[3] The court also terminated Eric's parental rights. He did not appeal.

[4] We can uphold the juvenile court's decision on any ground properly pleaded and proved even if it is not one upon which the court based its decision. *See In re M.W.*, 876 N.W.2d 212, 221 (Iowa 2016).

Code section 232.104(2)(b).[5] And her attorney does not formally ask for a delay of permanency on appeal.

So we turn to the argument raised. To terminate parental rights, the juvenile court must first find clear and convincing evidence supporting one of the grounds for termination listed under Iowa Code section 232.116(1). *See In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Even if the court rests its decision on more than one basis, we need only find sufficient proof under one paragraph to affirm. *See In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999).

We focus on paragraphs (f) and (h), which contain similar elements. Paragraph (f) applies to children four years of age or older (like K.P.) who have been removed from their parents' physical custody for twelve of the past eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days. *See* Iowa Code § 232.116(1)(f). Paragraph (h) applies to children three years of age or younger (like B.P.) who have been removed from their parents' physical custody for at least six of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days. *Id.* § 232.116(1)(h). Otherwise, both sections require a showing the children have been adjudicated CINA and clear and convincing evidence exists that at the present time the children cannot be returned to the custody of their parents as

---

[5] After a permanency hearing, the court may continue placement of the children for an additional six months. "An order entered under this paragraph shall enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

provided in section 232.102. *See Id.* § 232.116(1)(f), (h); *see A.M.*, 843 N.W.2d at 111 (describing "present time" as the time of the hearing).

The State offered ample proof to satisfy all the elements of paragraphs (f) and (h). Erin highlights her sobriety. And she asserts she was "in the process of securing housing and would have been able to provide a home for [the children] if given additional time to do so." We applaud her efforts to address her addiction. But her assertion misses the urgency of these grounds for termination. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency."). We find termination was proper under paragraphs (f) and (h).

**B.     Permissive Factors**

Before severing parental rights, the juvenile court must consider if any of the factors in Iowa Code section 232.16(3) tip the scales away from termination. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010).

Erin argues the juvenile court should have declined to terminate her parental rights because both sons are in the care of maternal aunts. *See* Iowa Code § 232.116(3)(a) (permitting court not to terminate if relative has "legal custody" of children). To supplement that argument, she contends creating guardianships for K.P. and B.P. with their aunts "would be equally effective at protecting the children from any safety concerns."

Erin bears the burden to show the aunts' temporary custody should preclude termination of her rights. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018). She fails to meet that burden. For most young children, "a guardianship is not a legally preferable alternative to termination." *See In re B.T.*, 894 N.W.2d 29,

32 (Iowa Ct. App. 2017). An exception may apply if a biological parent's relationship with the guardian is free of conflict. *Id.* at 34. To the contrary, this record shows Erin has a fraught relationship with her sisters. On these facts, section 232.116(3)(a) did not stand in the way of termination.

In her final claim, Erin contends the juvenile court should have declined to terminate because of the closeness of her relationship with the children. *See* Iowa Code § 232.116(3)(c). The record does not support this contention. We do not doubt Erin's testimony that she loves the children. But she also concedes her bond with them has frayed. Because of his early exposure to domestic violence and neglect, K.P. is especially reluctant to trust Erin. Erin did not offer clear and convincing evidence that terminating her parental rights will be detrimental to the children due to the closeness of their relationship.

**AFFIRMED.**